IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER STREBEL and TRACY HENNING, ) ) ) | |
| Plaintiffs, ) ) | Case No. 24-CV-00968 |
| v. ) ) | Judge Robert W. Gettleman |
| SCOULAR, f/k/a THE SCOULAR COMPANY, INC., ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Christopher Strebel ("Strebel") and Tracy Henning ("Henning") (collectively, "plaintiffs") bring this four-count second amended complaint against defendant Scoular, f/k/a the Scoular Company, Inc. Count I alleges a citizen's suit under § 7604(a)(1) of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(1); Count II alleges a citizen's suit under the § 7604(a)(3) of the CAA, 42 U.S.C. § 7604(a)(3); Count III alleges private nuisance; and Count IV alleges negligence. On April 30, 2024, defendant moved to: dismiss the second amended complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); request a more definite statement pursuant to Federal Rule of Civil Procedure 12(e); and strike pursuant to Federal Rule of Civil Procedure 12(f) (Doc. 27). For the reasons discussed below, defendant's motion is granted in part and denied in part.

## BACKGROUND

According to the factual allegations in plaintiffs' second amended complaint, plaintiffs seek injunctive relief and damages arising from allegedly unabated fugitive grain dust emissions

from defendant's grain-handling facility in Andres, Illinois, which they complain is polluting the neighboring property owned by Strebel for over 20 years. Both plaintiffs state that they live at the property (a single-family home and land).

Plaintiffs allege that from 1913 through February 27, 2013, the Andres & Wilton Farmers Grain and Supply Company ("Andres & Wilton") operated a grain elevator (the "Andres Facility). They state that on July 16, 2012, the United States Environmental Protection Agency ("USEPA") conducted an unannounced inspection of the Andres Facility, and on August 17, 2012, issued a Notice and Finding of Violation, EPA-5-12-IL-14 (NOV) to Andres & Wilton regarding violations at the facility, including, among other things, that Andres & Wilton was operating the Andres Facility without necessary permits and in violation of the Illinois State Implementation Plan ("SIP") for the CAA.

On September 5, 2012, plaintiffs allege that the USEPA issued a report on its inspection, stating that the USEPA found: loose grains scattered on the facility's yard; dusty dirt and gravel driveways; dump pits without induced draft and open doors while grains were dumped; visible emissions while trucks were unloading; lack of air pollution controls on the internal transferring area; sleeves or equivalent devices not extended into trucks being loading; and visible emissions while trucks were being loaded. The USEPA allegedly issued a Notice of Intent to File a Civil and Administrative Complaint to Prior Owner on December 6, 2012.

According to plaintiffs, Andres & Wilton filed a permit application with the Illinois Environmental Protection Agency ("IEPA") on September 28, 2012, and the IEPA issued a Joint Construction and Revised Operating Permit on December 11, 2012. Plaintiffs allege that defendant purchased the Andres Facility on or about February 27, 2013, and on April 10, 2013, the name on the IEPA-issued permit was changed from Andres & Wilton to defendant.

Plaintiffs then allege that the IEPA issued a Revised Joint Construction and Revised Operating Permit for the Andres Facility on or about October 30, 2013, to show a dump pit modification to allow construction of "baghouse control" and the operation of emissions sources and/or air pollution control equipment, including "Truck Loadout with Socks/Sleeves" and "Grain Storage Bins" for one year.

Plaintiffs further allege that on or about March 19, 2014, defendant entered into an Administrative Consent Order ("the Consent Order") with USEPA. According to plaintiffs, the Consent Order required defendant to submit construction and operating permits, and to agree to immediately implement compliance measures. Plaintiffs allege that on or about October 9, 2014, the IEPA issued a revised permit to allow defendant, among other things, to construct new cleaning and sorting equipment for one year. The IEPA allegedly further revised the permit on or about December 3, 2015, to allow defendant to again construct new cleaning and sorting equipment for one year. Plaintiffs allege that each of the permits state in paragraph 2a that:

> "No person shall cause or allow the emission of fugitive particulate matter from any process, including any material handling or storage activity that is visible by an observer looking generally toward the zenith (that is, looking at the sky directly overhead) from a point beyond the property line of the emission source, pursuant to 35 Ill. Adm. Code 212.301, except as exempted by 35 Ill. Adm. Code 212.314."

According to plaintiffs, after defendant acquired the Andres Facility, it substantially increased both the storage capacity and "throughput" of grain received, processed, and shipped through the facility. Plaintiffs allege that the facility operates within 100 feet of Strebel's property, and since it began its operations, defendant has "caused fugitive dust and grain emissions to fall onto and cover the Property with grain particulates." Moreover, plaintiffs allege that upon information and belief, defendant has operated without a valid operating permit since December 3, 2016, and has made modifications to the Andres Facility without an effective

construction permit.

Plaintiffs complain that Strebel emailed to defendant pictures taken from his property of defendant's "illegal emissions and the impact on the Property." Plaintiffs further complain that they called the federal Environmental Protection Agency, which directed them to contact the IEPA. Plaintiffs allege that they then "caused videos and pictures . . . to be forwarded to the IEPA," and on or around May 20, 2022, Dan Delgado of the IEPA directed Strebel to fill out a visible emissions log to submit to the IEPA, which he submitted on September 12, 2022.

According to plaintiffs, on September 19, 2022, Strebel notified the IEPA of "unbelievable amounts of grain dust" from defendant, and forwarded a picture and videos. Plaintiffs allege that defendant's operation of the Andres Facility has caused "excessive fugitive grain dust to be emitted and to fall onto the Property." Plaintiffs state that the fugitive dust and grain emissions have "caused physical distress and injury to Plaintiffs and to [the] Property, including causing even his horses to become sick," and Henning "in particular has suffered severe and permanent injuries as a result of exposure to toxic grain dust."[1] Plaintiffs allege that they "caused written notice to be provided to the USEPA, IEPA, and Illinois Attorney General" regarding alleged violations of the CAA on September 26, 2023.

Plaintiffs also allege that on February 25, 2023, the IEPA issued a construction permit to defendant with respect to construction of air pollution control equipment regarding a soy dehulling process. Plaintiffs allege that on January 30, 2024, defendant operated its facility in violation of the permit requirement by allowing visible dust clouds from its operations, and that

---

[1] In Exhibit G (which is incorporated by reference into the complaint), plaintiffs' counsel state that "grain dust has trespassed onto [plaintiffs'] property and caused them property damage, costs, personal injury and injury to their animals. In particular, Ms. Hennings had developed a form of environmentally-triggered lupus, has suffered painful lung irritation and suffered a permanent injury to her eyes as a result of excessive and persistent fugitiv grain dust exposure."

this construction permit has expired and has not been renewed.

Plaintiffs filed their initial complaint on February 2, 2024, with four counts pursuant to the same causes of action as the second amended complaint (citizen's suits under §§ 7604(a)(1) and (a)(3) of the CAA and claims for private nuisance and negligence). Defendant moved: to dismiss the complaint under Federal Rules 12(b)(1) and 12(b)(6); for a more definite statement pursuant to Federal Rule 12(e); and to strike pursuant to Federal Rule 12(f) (Doc. 10). On March 7, 2024, Judge Fuentes directed plaintiffs to "carefully review the motion to dismiss and exercise [their] right to amend under Rule 15(a)(1)(B), if appropriate," considering plaintiffs' right to amend their pleading once within 21 days. Plaintiffs filed their "signed" amended complaint (Doc. 21) on April 2, 2024, and that same day, moved to amend/correct the amended complaint (Doc. 23), which they stated was "not filed to address the issues in Defendant's motion to dismiss other than the lack of signature." The court granted leave to file the proposed second amended complaint, and plaintiffs filed the instant second amended complaint on April 8, 2024 (Doc. 25). Defendant again seeks to dismiss the complaint.

## DISCUSSION

In the instant motion, defendant moves to dismiss Counts I and II (alleged violations of the CAA) pursuant to Rules 12(b)(1) and 12(b)(6). Defendant also asks the court to order a more definite statement of plaintiff's allegations in Counts III and IV pursuant to Rule 12(e), because according to defendant, "[f]acially, the allegations that can plausibly be related to both causes of action hinge on the CAA violations" in Counts I and II. Last, defendant requests that the court strike plaintiffs' request for punitive damages pursuant to Rule 12(f) because defendant "seriously questions the Plaintiffs' basis for making these requests." The court will address each argument.

First, the court evaluates defendant's argument that Counts I and II should be dismissed pursuant to Rule 12(b)(1). In Count I, plaintiffs allege a citizen's suit under § 7604(a)(1) of the CAA, for violations of an emission standard or limitation, or an order issued by the Administrator or a State with respect such a standard of limitation. In Count II, plaintiffs allege a citizen's suit under the § 7604(a)(3) of the CAA for violations of any condition of a permit to construct new or modified major emitting facilities. According to defendant, plaintiffs' claims under the CAA should be dismissed because plaintiffs lack standing to pursue the CAA violations alleged in those counts.

To survive a motion to dismiss under Rule 12(b)(1), plaintiffs must show that the court has jurisdiction. Fed. R. Civ. Pro. 12(b)(1). Federal courts have limited jurisdiction, and Article III of the U.S. Constitution confines federal courts to resolution of "cases" or "controversies." U.S. Const. art. III. As a threshold matter, Article III requires that plaintiffs establish standing. To have standing, plaintiffs must have suffered an injury in fact that is traceable to the defendant's challenged conduct and redressable by a favorable decision from the court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). An injury in fact is an invasion of a legally protected interest that is concrete and particularized and actual or imminent. Id. at 560.

Defendant argues that plaintiffs lack standing because: (1) they have not alleged a concrete harm; and (2) the allegedly violated regulations are not capable of judicial enforcement. Specifically, defendant argues that plaintiffs have not alleged that they suffered a concrete harm from the alleged violations of the CAA and/or the Illinois State Implementation Plan ("the SIP"). States promulgate SIPs under the CAA to implement the federal ambient air quality standards set by the USEPA. See 42 U.S.C. §§ 7409–10. Defendant argues that in 11 of the 13 alleged violations in Count I, plaintiffs allege purely procedural violations, which are insufficient to

establish standing under TransUnion, LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021).

The court rejects defendant's argument. As plaintiffs note, the complaint alleges that defendant's fugitive dust and grain emissions have "caused physical distress and injury to Plaintiffs and to [the] Property, including causing even his horses to become sick," and Henning "in particular has suffered severe and permanent injuries as a result of exposure to toxic grain dust." Allegations of physical harm, as here, "certainly qualify as concrete injuries under Article III" as "traditional tangible harms." TransUnion, LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021). Standing focuses on a plaintiff's alleged harm, not the defendant's alleged conduct. Id. In the instant case, plaintiffs sufficiently allege in Counts I and II that defendant's procedural violations caused them physical harm by producing "excessive fugitive grain dust to be emitted and to fall onto the Property." They seek injunctive relief due to their allegation that defendant "has been allowed to continue its operations virtually unabated" without a current effective operating permit, which they allege has resulted in a risk of future physical harm. These alleged harms are sufficient to establish standing.

Defendant next argues that plaintiffs lack standing because certain regulations that plaintiffs allege defendant violated in Count II are not judicially enforceable.[2] Specifically, defendant argues that § 212.301 of the Illinois Administrative Code is not capable of judicial enforcement. While plaintiffs do not allege that defendant violated § 212.301, they allege that defendant violated Section 2c of an IEPA-issued permit, which states that:

> "Pursuant to 35 Ill. Adm. Code 212.301, no person shall cause or allow the emission of fugitive particulate matter from any process … that is visible by an observer looking generally toward the zenith at a point beyond the property line."

---

[2] The court notes that this argument does not address "standing" because it does not address plaintiff's alleged harm. Rather, this argument addresses plaintiff's cause of action, which is another component of jurisdiction that is properly evaluated in a motion to dismiss pursuant to Rule 12(b)(1).

Defendant argues that plaintiffs cannot bring a CAA citizen suit based on an alleged violation of § 212.301 pursuant to the Seventh Circuit's decision in McEvoy v. IEI Barge Services, Inc., 622 F.3d 671 (7th Cir. 2010). In McEvoy, the court explained that § 212.301 is different than other regulations in the Illinois SIP that contain "metrics that are susceptible to objective evaluation in court." Id. at 680. The court concluded that § 212.301 is not susceptible to judicial enforcement because it raises questions that the court was incapable of answering to determine whether a defendant violated that regulation. Id. at 679. For example, the court asked:

> "What are the characteristics of the observer? Where is she standing? Must the matter be visible to the naked eye, and if so, whose naked eye? Is 'looking generally toward the zenith' different from looking toward the zenith? Do weather conditions matter? Are there a minimum number of days per year, or hours per day, for assessing visibility?"

Id. Defendant argues that Count II should be dismissed because it concerns defendant's alleged violations of § 212.301, which are unenforceable under McEvoy.

Plaintiffs counter that defendant has misinterpreted McEvoy, which they argue is distinct from the instant case. According to plaintiffs, McEvoy is limited to a citizen's suit brought under § 7604(a)(1) of the CAA. Section 7604(a)(1) authorizes private citizens to bring "citizen suits" in federal court against "any person" who is alleged to have violated or to be in violation of: (a) "an emission standard or limitation under this chapter"; or (b) "an order issued by the Administrator or a State with respect to such a standard or limitation." 42 U.S.C. § 7604(a)(1). In McEvoy, the plaintiffs alleged that the defendant violated the CAA and Illinois SIP by allowing visible fugitive particulate matter to be emitted, violating § 212.301 of the Illinois SIP.[3]

---

[3] Section 212.301 states that "[n]o person shall cause of allow the emission of fugitive particulate matter from any process, including any material handling or storage activity, that is visible by an observer looking generally toward the zenith at a point beyond the property line of the source."

According to plaintiffs, the Seventh Circuit determined that § 212.301 was not an "emissions standard or limitation" as defined by the CAA in § 7604(f).

Plaintiffs further argue that this case is distinct from McEvoy because they claim that defendant violated a term or condition of a permit issued under the Illinois SIP pursuant to § 7604(a)(3), not § 7604(a)(1) (which contemplates "emission standard[s] or limitations"). Section 7604(a)(3) contemplates citizen suits against any person "who proposes to construct or constructs any new or modified major emitting facility without a permit . . . or who is alleged to have violated . . . or to be in violation of any condition of such permit." According to plaintiffs, Count II claims that defendant violated a condition of the February 2023 construction permit, not an "emissions standard or limitation" under the Illinois SIP.[4]

The court agrees with defendant that Count II should be dismissed. As defendant argues, plaintiffs may complain pursuant to the terms of an IEPA-issued permit, but that permit's terms are expressly "[p]ursuant to 35 Ill. Adm. Code 212.301," which is not judicially enforceable under McEvoy. In McEvoy, the court was principally concerned with the statute's language, which § 212.301 mirrors. The court rejects plaintiffs' argument that McEvoy has been superseded by the USEPA's promulgation of "Method 22," which is a method for determining the presence or absence of visible emissions from emission units that is incorporated by reference in the Illinois SIP. See 35 Ill. Admin. Code § 212.107. Method 22 expressly does not apply to § 212.301. See 35 Ill. Admin. Code § 212.107 ("This Subpart shall not apply to Section 212.301 of this Part.").

Moreover, even if plaintiff were correct that the relevant language is somehow more

---

[4] Plaintiffs note that the Seventh Circuit stated in McEvoy that its reading of the CAA "does not interfere with citizens suit based on permit terms; so long as a plaintiff has identified a standard, limitation, or schedule under any permit issued pursuant to 42 U.S.C. §§ 7661–7661f."

cognizable because it is pulled from a permit rather than a statute or regulation, the court agrees with defendant that § 7604(a)(3) (which applies to "any new or modified major emitting facility") does not apply to the February 2023 construction permit. As defendant notes, the permit states that it was issued "on the construction of the Soybean Dehulling Process at the source not constituting a new major source or major modification pursuant to Title I of the Clean Air Act, specifically 40 CFR 52.21 and 35 Ill. Adm. Code Part 204 (Prevention of Significant Deterioration (PSD))." In 40 C.F.R. 52.21(a)(2)(i), the USEPA limits the section to "any new major stationary source," as defined in 40 C.F.R. 52.21(b)(1). In 40 C.F.R. 52.21(b)(1)(i)(a), the USEPA then defines "major stationary source" as consistent with the definition of "major emitting facility" in 42 U.S.C. § 7602(j).

Because the court dismisses Count II based on McEvoy, it does not need to address defendant's argument that "any cause of action premised on Paragraph 60 (under Count II) should be dismissed."[5] However, the court notes that plaintiffs are correct that it would be inappropriate to "dismiss" Paragraph 60 at this stage, where the question is "simply whether the complaint includes factual allegations that state a plausible claim for relief." BBL, Inc. v. City of Angola, 809 F.3d 317, 325 (7th Cir. 2015). Count II does not rise or fall depending on Paragraph 60.

Regarding Count I, defendant argues that Paragraph 49, subparagraphs (b), (c), (d), and (e), should also be dismissed under McEvoy for lack of judicial enforceability. These alleged violations include: (b) failure to maintain dust control devices; (c) failure to [e]nsure that air

---

[5] Paragraph 60 reads: "Upon information and belief, this construction permit [(i.e., the IEPA-issued construction permit from February 25, 2023, for construction of air pollution control equipment] has expired and has not been renewed." According to defendant, plaintiffs did not provide proper notice of this alleged violation of § 7604(a)(1) to the Administrator of the EPA, the IEPA, and defendant more than 60 days prior to the commencement of the lawsuit.

pollution control devices operate properly; (d) allowing visible emissions of dust to escape into the atmosphere from the "head house"; and (e) allowing visible [particulate] matter emissions during grain cleaning and/or separation operations. According to defendant, these regulations "contain no objective metric" to allow the court to evaluate whether they have been violated.

Plaintiffs respond that § 7604(a)(1) allows plaintiffs to bring citizen's suits to enforce "an order issued by the Administrator or a State with respect to [an emissions standard or limitation]." See 42 U.S.C. § 7604(a)(1). Plaintiffs explain that Count I is premised on alleged violations of the Consent Order from the USEPA, in which defendant agreed to implement a compliance program that "essentially adopt[ed] the housekeeping practices in Section 241.461 of the Illinois SIP." According to plaintiffs, the Consent Order's requirements are not "emissions standards of limitations" as contemplated by McEvoy.

Yet, even assuming that plaintiff is correct about the Consent Order under § 7604(a)(1), plaintiffs do not allege that Count I is based on alleged violations of the Consent Order. Rather, they allege that defendant "is in violation of the [listed] 'emissions standards or limitations' or 'an order issued by the Administrator or a State with respect to such a standard or limitation." In explaining defendant's alleged violations, plaintiffs refer to requirements of subparts K and S of the Illinois SIP, which govern "fugitive particulate matter" and "grain handling operations," respectively. Count I does not mention the Consent Order.

However, the court concludes that Count I states a claim. As discussed above, in Count I, plaintiffs allege a citizen's suit under § 7604(a)(1), for violations of an emission standard or limitation, or an order issued by the Administrator or a State with respect such a standard of limitation. Even if defendant is correct that Paragraph 49, subparagraphs (b), (c), (d), and (e), should be dismissed as judicially unenforceable emission standards or limitations under McEvoy,

rejecting those subparagraphs does not mean that Count I fails to state a claim. Importantly, defendant does not argue that the other subparagraphs ((a), and (f)-(m)) are not judicially enforceable. Instead, defendant argues that plaintiffs cannot use the other subparts (except subparagraph (f)) to plausibly state a claim under Federal Rule 12(b)(6).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Fed. R. Civ. Pro. 12(b)(6). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The court does not need to evaluate whether plaintiffs have stated a plausible claim pursuant to subparagraphs (a) and (g)-(m) in order to deny defendant's motion to dismiss Count I because defendant does not dispute that subparagraph (f) states a claim under Rule 12(b)(6). Plaintiffs do not need to claim additional violations of § 7604(a)(1) for Count I to survive at this stage; it is sufficient for plaintiffs to plausibly plead one violation.

That being said, the court addresses defendant's other arguments for the sake of completeness. The court is not persuaded that based on plaintiff's allegations, Subpart K does not apply to defendant as a grain-handling and grain-drying operation. Section 212.302, which defines the geographical areas of application, states, in relevant part, that Subpart K shall apply to "all manufacturing operations (SIC major groups 20 through 39 except for those operations subject to Subpart S of this Part (Grain-Handling and Grain-Drying Operations) that are outside the areas defined in Section 212.324(a)(1) of this Part)." (Emphasis added). It is not clear to the court whether defendant falls outside the defined areas to qualify for exemption from Subpart K

because the parties do not address it. However, plaintiffs appear to concede this argument by focusing on defendant as a party to the Consent Order, which, as discussed above, is not mentioned in Count I.

The court agrees with plaintiffs that their second amended complaint contains sufficient factual allegations to support their claims in Paragraph 49. Plaintiffs have alleged that defendant caused "excessive fugitive grain dust to be emitted and to fall onto the Property," with "illegal emissions." Taking the factual allegations in the light most favorable to plaintiffs, it is reasonable to infer that alleged conduct by defendant, including actions taken related to air pollution and dust control devices, and grain drying operations and oversight, was deficient under § 7604(a)(1) of the CAA; otherwise, there would not be "excessive fugitive grain dust." It is even more reasonable to infer that defendant may have violated, and may continue to violate, the cited sections of the Illinois SIP because, according to plaintiffs, the USEPA previously determined that the Andres Facility was operating in violation of the Illinois SIP after an unannounced inspection in 2012.

The exception is subparagraph (g), where the court agrees with defendant that plaintiffs' allegation is inconsistent with other allegations in the second amended complaint, as well as unsupported by specific factual allegations of construction that defendant undertook without a permit. It is true, as plaintiffs argue, that applying for certain permits in 2013, 2014, 2015, and 2023 does not mean that defendant has "consistently" applied for and obtained construction and operating permits as required by the CAA and Illinois SIP. Yet, unlike the other subparagraphs in Paragraph 49, which are supported by plaintiff's allegations of ongoing issues with excessive grain dust, subparagraph (g) is not otherwise supported. Further, as defendant argues, it does not actually allege that defendant had an issue with consistency.

Defendant then argues that Counts III and IV are subject to Federal Rule 12(e) for a more definite statement. Count III alleges private nuisance, for an allegedly substantial invasion of plaintiffs' interest in the use and enjoyment of property based on unreasonable polluting operations, and Count IV alleges negligence, for allegedly willful and/or reckless breach of defendant's duty of reasonable care to comply with the law and prevent substantial emissions of toxic fugitive dust, grain, and other substances on their property. Rule 12(e) provides for more definite statement where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R Civ. P. 12(e).

According to defendant, "[f]acially, the allegations that can plausibly be related to both causes of action hinge on the CAA violations" in Counts I and II. Defendant argues that plaintiffs "pled no separate or independent facts related to Counts III and IV." Thus, defendant seeks a more definite statement of the counts so that it can "sufficiently know the allegations against it." Alternatively, defendant seeks that the court not require a response to the second amended complaint until 14 days after the court rules on its motion to dismiss.

The court rejects this argument. Plaintiffs do not need to plead factual allegations in Counts III and IV that are "separate or independent facts" than the factual allegations for Counts I and II. Rather, they simply need to demonstrate that their factual allegations are sufficient to plausibly plead claims under the specified independent causes of action in each count. In the instant case, Counts III and IV claim that defendant committed common law tort violations based on plaintiffs' factual allegations of excessive fugitive dust emissions (which are incorporated by reference in Counts III and IV). These counts do not "hinge" on CAA violations. Regardless, defendant's motion demonstrates that it clearly understands that Counts III and IV are common law tort claims. For example, when arguing about punitive damages, defendant argues that

"[p]laintiffs have only pled legal conclusions that the underlying torts (i.e., private nuisance and negligence) are accompanied by aggravating circumstances . . . ."

Last, defendant requests that the court strike plaintiffs' request for punitive damages and attorney's fees in Counts III and IV pursuant to Rule 12(f). Rule 12(f) motions allow courts to strike "an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Regarding punitive damages, courts generally award punitive damages only "when the underlying tort is accompanied by aggravating circumstances such as willful, wanton, malicious, or oppressive conduct." City of Evanston v. Texaco, Inc., 19 F.Supp.3d 817, 828 (N.D. Ill. 2014) (citing Chi. Title Land Trust Co. v. JS II, LLC, 977 N.E.2d 198, 219 (Ill. App. 2012)).

Defendant argues that plaintiffs have not plead sufficient facts to support their legal conclusion that punitive damages are warranted by aggravating circumstances. Defendant also argues that plaintiffs' request for attorney's fees in Counts III and IV should be stricken because it "could only be recovered, if ever, after prevailing on a CAA violation." Plaintiffs counter that they have alleged that defendant's actions (in failing to control fugitive dust emissions) were "willful, wanton, and/or reckless," or "willful, reckless and/or negligent." Moreover, plaintiffs argue that it is well-settled under Illinois law that courts are "permitted to take into account the amount of the attorney fees expended in a case when assessing a punitive damages award." Int'l Union of Operating Eng'rs, Local 150 v. Lowe Excavating Co., 225 Ill. 2d 456, 490 (2006).

The court agrees with plaintiffs that they have sufficiently alleged that defendant acted willfully and wantonly in allegedly failing to control emissions. According to plaintiffs, defendant failed to control fugitive dust emissions despite previous violation notices from the USEPA, informing them of the necessary permits and requirements of the Illinois SIP, and

communications from Strebel himself.  As discussed above, plaintiffs have incorporated these factual allegations by reference in Counts III and IV.

Accordingly, the court grants in part and denies in part defendant's motion.  The court dismisses Count II pursuant to Rule 12(b)(1), but it denies defendant's motion to dismiss Count I.  The court denies defendant's motion for more definite statement pursuant to Rule 12(e), and it denies defendant's motion to strike plaintiffs' request for punitive damages pursuant to Rule 12(f).

## CONCLUSION

For the reasons stated above, the court grants in part and denies in part defendant's motion (Doc. 27).  The court dismisses Count II, and denies defendant's motion to dismiss Count I.  The court denies defendant's motion for more definite statement, and denies defendant's motion to strike.  Defendant is directed to answer plaintiffs' second amended complaint on or before September 11, 2024.  The parties are directed to file a joint status report using this court's form on or before September 25, 2024.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:  August 21, 2024**