**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER STREBEL and TRACY HENNING, | ) ) | |
| | ) | Case No. 24 C 968 |
| Plaintiffs, | ) | |
| | ) | District Judge Robert W. Gettleman |
| v. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| SCOULAR, f/k/a/ THE SCOULAR COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs' Motion for Discovery Sanctions ("Motion"; D.E. 118) offers an opportunity to explore the limits of counsel's ability to defend depositions in two important respects: Instructing witnesses not to answer to protect attorney-client privileged communications, and counseling witnesses confidentially during recesses or "breaks" in the deposition. These areas have generated judicial opinions in different directions in the federal courts. Against the backdrop of a party or a deponent's right to counsel, the Court examines these questions in deciding the Motion within its broad discretion to supervise discovery on the district court's referral, *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013), and to decide what if any sanction might be appropriate when counsel pushes the limits of federal civil deposition defense. *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012).

**BACKGROUND**

In this citizen lawsuit under the Clean Air Act, Christopher Strebel and Tracy Henning ("Plaintiffs") complain of ill effects from the intrusion of "fugitive" grain dust onto their property from a facility operated by Scoular ("Defendant") in Will County, Illinois. *See* Second Amended

Complaint ("Cmplt."; D.E. 25) ¶¶ 41-65.  Plaintiffs also assert pendent state law nuisance and negligence counts.  *Id.* ¶¶ 66-74.  The matter is near the close of discovery.  In the Motion, Plaintiffs point to two issues that arose during the depositions of witnesses Perry, Reed and Zabrowski: (1) defense counsel objected to certain questions on grounds of attorney-client privilege and then instructed the witnesses not to answer, in a manner Plaintiffs assert was improper, based on the nature of Plaintiffs' "foundational" questions; and (2) defense counsel conferred with the witnesses during recesses in the deposition, in conferences Plaintiffs view as unprivileged under federal law and now discoverable as a sanction for what Plaintiffs call Defendant's "witness tampering."  Motion at 3-7.  As a sanction, Plaintiffs want to re-open three individual depositions, presumably so they can ask the witnesses more questions about matters as to which defense counsel asserted attorney-client privilege during the depositions.  Further, Plaintiffs seek a sanction ordering Defendant to be compelled to produce all documents it has withheld or redacted as attorney-client privileged, with all the relief at Defendant's cost.  *Id.* at 14-15.

At the depositions of witnesses and Scoular managers Perry, Reed, and Zebrowski, in passages brought to the Court's attention in the Motion, defense counsel instructed the witnesses not to answer questions that Plaintiffs consider merely "foundational."  More specifically, the cited instructions not to answer came in response to questions in which Plaintiffs' counsel asked the witnesses if they had conferred with counsel *about* these particular subjects:

*Witness Perry*

- the Rule 30(b)(6) notice served on Scoular;

- whether the witness saw "an opinion letter from an attorney about whether Scoular had a lifetime operating permit for the Andres facility from the State of Illinois";

- "the issue about the operating permit" between June 2 and December 19, 2022;

2

*Witness Reed*

- Reed's "report about that angry interaction with Chris and Tracy about the paint";

- "anything at the Andres facility";

- "any interaction you had with Chris and Tracy";

*Witness Zebrowski*

- "the substance of any other depositions that may have taken place in this case";

- "the allegations of plaintiffs' complaint";

- "this deposition";

- "what you know about your interactions with Chris Strebel and Tracy Henning";

- "how you should answer questions about Strebel and Henning's claims that grain dust passes over onto their property";

- "how you should respond to certain questions that might be asked in this deposition"; and

- to whom he had "passed on" information about complaints by other employees at Scoular's Andres facility about "harassing" incidents.

Motion at 5-10.

At the depositions of at least Reed and Zebrowski, Plaintiffs' report, the witnesses testified to having conferred with Scoular's counsel during deposition recesses. *See id.* at 12-13 (citing to deposition transcripts). During the Reed deposition, Reed confirmed that he did speak to Scoular's counsel during recesses: "[W]e had a few words at some point. Like, I'm going upstairs to go to the bathroom because the downstairs bathrooms are occupied, and to get coffee." *Id.* Plaintiffs' counsel then asked whether, during those recesses, Reed talked with Scoular's counsel "about any of the questions or topics that we've discussed in the deposition," and "about the substance of the deposition," prompting Scoular's counsel to object and instruct not to answer based on attorney-

3

client privilege. *Id.* During the Zebrowski deposition, Plaintiffs' counsel asked the witness if, "during any of our breaks," the witness "discussed the substance of this deposition with counsel," prompting an objection and instruction not to answer on the same ground. *Id.* Plaintiffs, in the Motion, do not recite any other passages in support of their plea for sanctions based on conferences between the deponents and Scoular's counsel during deposition recesses.

## ANALYSIS

The Seventh Circuit is perhaps the only federal court of appeals to have approached the question of whether and how counsel may discuss the substance of a matter with a deponent during a federal deposition, and more importantly, how a supervising court might react to that sort of effort to conduct a privileged conference once the deponent's examination has begun.[1] But the Seventh Circuit did so only in what it called a "brief discussion" of the problem, which it resolved by deferring to the district court's wide discretion to manage discovery. *Hunt*, 680 F.3d at 780. In *Hunt*, the question of deposition "coaching" during recesses came up in a rare appellate posture after one party claimed an abuse of district court discretion in refusing to strike deposition testimony said to be the product of improper private conferences with counsel about exhibits as they were presented, and of private conferences that occurred during breaks. *Id.* In declining to find an abuse of discretion, the Seventh Circuit made two propositions clear: (1) "[c]oaching and private conferences (on issues other than privilege) that would be inappropriate during trial testimony are not excused during a deposition merely because the judge is not in the room," and (2) "[d]istrict courts have broad discretion in supervising discovery, including deciding whether and how to sanction such misconduct, for they are much closer to the management of the case and

---

[1] *See* Brian R. Iverson, "Give Me a Break: Regulating Between Attorneys and Their Witness Clients During Deposition Recesses," 36 Geo. J. Legal Ethics 497, 501 (Summer 2023) (describing *Hunt* as the only federal court of appeals decision to address directly the issue of attorney and client-witness communications during deposition recesses).

the host of intangible and equitable factors that may be relevant in exercising such discretion." *Id.*; *see also* Fed. R. Civ. P. 30(c)(1) ("The examination and cross-examination of a deponent proceed[s] as they would at trial ….."); Fed, R, Civ. P. 30(d)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit the deposition under Rule 30(d)(3)].")

That is to say that although Rule 30 and the "brief discussion" in *Hunt* provide lawyers with considerable guidance in minding their manners during depositions, and in not improperly coaching witnesses or disrupting depositions, the answers to what ought to be done about the lawyers' transgressions, real or imagined, remain squarely within the realm and good judgment of the district judge or magistrate judge supervising discovery. The Court thus reaches Plaintiffs' complaints about Scoular's defense of the Perry, Reed and Zebrowski within that broad discretion. In Part I below, the Court considers an argument that Plaintiffs raise at the end of their Motion but that presents an important threshold question, namely whether attorney-client privilege could apply at all to communications between these deponents and Scoular's counsel, either before or during the depositions. Part II explores defense counsel's instructions not to answer, and whether they warrant Plaintiffs' requested sanctions. Part III examines the issue of mid-deposition recesses and the attorney communications that occurred during those breaks, with a view toward whether the breaks are of the sort that would warrant sanction, and specifically the sanctions Plaintiffs seek in the Motion.

I. **The Communications in Question Between the Deponents and Scoular's Counsel Were Privileged.**

As a preliminary matter, the Court dispenses with Plaintiffs' argument, made at the end of their brief (Motion at 13-15), that Defendant has no privilege assertions to make concerning these three depositions because corporate counsel did not represent them individually, and because the

5

witnesses were outside the Illinois law "control group" rule extending privilege protection to communications between corporate counsel and employees with sufficiently managerial roles.

The Court applies federal privilege law to this Motion in this action in which Plaintiffs' principal claims are two federal counts under the Clean Air Act, 42 U.S.C. § 7401 (Cmplt. ¶¶ 41-65), and pendent state law nuisance and negligence counts (*id.* ¶¶ 66-74). That is because under Federal Rule of Evidence 501 and applicable common law, federal privilege law applies because federal law supplies the rule of decision for the case's principal counts, even amid pendent state law claims. *Warren v. Sheriff of Cook County,* No. 09 CV 3512, 2013 WL 5835771, at *2 (N.D. Ill. Oct. 30, 2013), citing *Memorial Hosp. for McHenry Co. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). The Court in its discretion declines Plaintiffs' invitation to strip Scoular (or the deponents) of attorney-client privilege for their private communications on the ground that certain of Plaintiffs' "foundational" questions were somehow limited to discrete components of the state law nuisance and negligence claims, and specifically the intent, scienter or state-of-mind elements of those claims. *See* Motion at 14-15. Plaintiffs make that argument in support of an assertion that (1) the instructions not to answer arise only on issues for which state law supplies the rule of decision, so that (2) state privilege law and specifically the Illinois "control group" rule applies, so that (3) the communications about which Plaintiffs were asking could not be privileged because the deponents were not "control group" members. *Id.*

Plaintiffs' argument in this respect is an aggressive but undeveloped one. Plaintiffs supply no authority for their argument or the proposition that the Court should compartmentalize Plaintiffs' claims and their deposition questions to render meritless Scoular's privilege objection as being based on no privilege at all, based on an Illinois rule in a case in which the principal claims arise under the federal Clean Air Act. The Court treats this undeveloped, unsupported

6

argument as waived. *See Hakim v. Safariland, LLC*, 79 F.4th 861, 872 (7th Cir. 2023) ("[W]e have made clear that . . . perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Moreover, even if the Court were to reach this argument, the Court notes that the state and federal claims appear to arise out of a common nucleus of operative fact, meaning that the Court likely would find itself in the same position as other federal courts that have recognized the reality that applying different jurisdictions' privilege law to different claims in the same case causes a privilege recognized by one body of law to be "meaningless if the evidence it would protect is revealed in connection with a separate claim in the same proceeding." David M. Greenwald, Michelle L. Slachetka & Caroline L. Meneau, *Testimonial Privileges* § 1.10 (Thomson Reuters 2025 ed.). Consequently, "nearly all courts have held that federal common law will be applied regarding both the federal and the pendent state law claims." *Id.*, citing cases including *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 609 (N.D. Ill. 2010).

Applying federal privilege law, the Court must find that as a threshold matter, barring deposition misconduct that might render a communication subject to disclosure as somehow unprivileged, the attorney-client privilege applies to the communications the deponents had with Scoular counsel before the deposition, i.e., as to the matters Plaintiffs asked about when defense counsel instructed the deponents not to answer. Federally, the attorney-client privilege protects communications made in confidence by a corporation's employees to the corporation's attorney, when acting as an attorney and not a business advisor, for the purpose of obtaining legal advice for the corporation, *Upjohn Co. v. United States*, 449 U.S. 383, 394-99 (1981); or for the purpose of the attorney's fact investigation undertaken to provide legal advice to the corporate client, *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009), so that any factual

7

statements made between the attorney and the employees for that purpose are privileged. *Babych*, 271 F.R.D. at 610. The parties disagree about the extent of the deponents' managerial responsibilities at Scoular, *see* Motion at 13-14 and Defendant's Opposition to Plaintiffs' Motion for Discovery Sanctions ("Opp."; D.E. 124) at 5-7, but that discussion confuses *Upjohn* with the Illinois "control group" test, which *Upjohn* ultimately rejected in favor of a less structured approach that "makes no distinction with regard to an agent's position of degree of decision-making responsibility." Greenwald, et al. § 1:41. "Instead, the privilege turns on whether the employee imparted information to the lawyer or received assistance from the lawyer on behalf of the organization." *Id.*, citing *Upjohn*, 449 U.S. at 394-95. The deponents' communications with Scoular counsel fit squarely within the *Upjohn* framework, *see* Opp. at 5-7, so the communications at issue between Scoular and these deponents fall within the privilege's protections under *Upjohn*.

Finally, as for the communications between Scoular's counsel and the deponents during recesses in the depositions, the Court will analyze privilege protection for those communications under the *Upjohn* framework as well, and in consideration of the law of attorney-client privilege applicable to the defense of depositions as discussed below in Part III.

## II. Defense Counsel's Instructions Not To Answer Do Not Warrant Sanctions.

Plaintiffs rely on *Motorola Solutions, Inc. v. Hytera Comms. Corp.*, No. 17 C 1973, 2019 WL 2774126, at *3-4 (N.D. Ill. July 2. 2019), for the proposition that the subject matters of a conference with counsel are not privileged, then argue that Plaintiffs' counsel's "foundational" questions about whether attorney-client communications occurred as to certain specific subject matters did not seek disclosure of privileged communications, so that Scoular's counsel's instructions to answer were improper and should be sanctioned. The Court respectfully disagrees.

In *Motorola Solutions*, the questions "sought the time of a meeting about a specific topic," namely about the deponent's "suspicions that intellectual property may or had been wrongfully taken from Motorola and transferred to Hytera," and the questions asked "[n]othing more" about the attorney-client privileged communications, yet counsel instructed the witness not to answer. *Id.* Generally, the Court agrees with *Motorola Solutions* that deposition questions identifying very broad subject matters discussed with counsel should not trigger instructions not to answer, although the factual context of *Motorola Solutions* (i.e., deposition questions about the general issue of "suspicions" of the theft of intellectual property) is something of an obvious case that gives us little practical guidance about when the questions might cross a line into privileged matters once the subject matter of the deposition questions becomes more specific. For instance, the fact that a deponent spoke to an attorney in preparation for a deposition is commonly disclosed, treated as unprivileged, and not surprising, and as a result, a "yes" answer to that question would not be found to disclose the privileged legal advice or content of the communication. And nor should an instruction not to answer be triggered by a question about the broad nature of the lawsuit, such as the question at issue in *Motorola Solutions* about suspected intellectual property theft. Several of Scoular's counsel's instructions not to answer came in response to "foundational" questions identifying very broad subject matters, such as "this deposition," and the "allegations" in the complaint. Those instructions not to answer were unnecessarily protective, but Scoular's refusal to permit answers to them deprived Plaintiffs only of the knowledge that witnesses talked with lawyers about their depositions and about the subject matter of the lawsuit. Had the answers to those questions been "yes," the next logical line of inquiry would have been directed at the content of the attorney-deponent communications, yet Plaintiffs' counsel made clear he was not asking the deponents to disclose that content. Motion at 5-6. Scoular's instruction not to answer did not

9

deprive Plaintiffs of any meaningful information and did not materially obstruct the depositions' fact-finding function.

Moreover, the Court is not willing to read *Motorola Solutions* (or any of the cases cited within it) as broadly as Plaintiffs would like. Plaintiffs see the refusal to answer a question that identifies any subject matter of an attorney-client communication at all, no matter how specifically, as improper, triggering redeposition or even disclosure of the communication as a sanction. Some of Plaintiffs' questions recited here touched on very specific facts, such as facility permitting, a Scoular attorney's legal opinion about permitting issues, and the nature of various "incidents" or conflicts involving Plaintiffs and Defendant's facility staff. The fact that a deponent made a judgment to obtain legal advice about such a highly specific subject could well be a privileged fact, notwithstanding the Plaintiffs' expansive reading of *Motorola Solutions*.

Federal courts have explored the question of where the line exists between unprivileged "subject matter" issues and more specific topics that convey the content of privileged communications, or come too close to doing so, when such topics are included in deposition questions that are ostensibly "foundational." Courts have recognized that questions about a deponent's communications with counsel could well be so specific that they "essentially supply the substance of attorney-client communications." *Aldora Aluminum & Glass Prods., Inc. v. Poma Glass & Specialty Windows, Inc.*, No. 3:14-CV-1402-J-34JBT, 2016 WL 7668484, at *2–3 (M.D. Fla. Feb. 18, 2016), citing *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 633, 636 (S.D. Ohio 1984). In *Dayco*, the plaintiff served interrogatories asking defendants to list every occasion on which they had written communications with counsel during a specific 29-month time frame about five subcategories concerning defendants' contracting procedures with Soviet counterparties, and defendants invoked the attorney-client privilege in refusing to answer

10

regarding the five subcategories. *Id.* at 635-36. The case involved allegations that a person named Reich defrauded the company by taking commissions for non-existent contracts with the then-Soviet Union. *Id.* at 634. The district court reasoned that although the plaintiff could discover whether the defendants consulted with counsel during the specified time frame "concerning Dayco's dealings with Mrs. Reich," the interrogatories' effort to determine whether defendants talked to attorneys about the specific five contracting subcategories[2] went "beyond these limits" by asking more than "whether or not meetings with counsel took place at all under the general heading of the Reich affair." *Id.* at 636. "By asking highly detailed, leading questions, Plaintiff *in effect* can obtain the *substance* of the attorney-client communications which might have taken place." *Id.* The Court therefore does not accept Plaintiffs' proposition that they may ask Scoular employees, without intruding on attorney-client privilege, about whether they communicated with counsel about virtually any subject matter because, per Plaintiffs' expansive reading of *Motorola*, no subject matter of any privileged communication is ever protected, and any question directed at such subject matter will virtually always be general or "foundational" enough to force witnesses to disclose whether they raised or discussed such subject matter with counsel.

That said, the Court stops short of a specific analysis of which subject matters about which Plaintiffs inquired (as topics of attorney-client communications) became so specific that Scoular's instructions not to answer were proper. Before the Court is a motion for sanctions. Accordingly, the Court relies on its substantial discretion conferred by *Hunt*, 680 F.3d at 780, to conclude that

---

[2] The specific subcategories in *Dayco* were: (i) the procedures by which contracts with purported Soviet purchasers should be or were negotiated or drafted; (ii) the existence of or validity of purported contracts with purported Soviet purchasers; (iii) the manner in which Dayco or its representative did or should proceed in an effort to collect sums purportedly due to Dayco or to its agent under purported contracts to purported Soviet purchasers; (iv) the possibility that purported contracts with purported Soviet purchasers were in fact non-existent in whole or in part; (v) efforts which could or should be made on behalf of Dayco to ascertain the extent to which purported contracts to purported Soviet purchasers were in fact non-existent. *Id.*

the instructions not to answer, even where they were overly protective, did not obstruct the deposition's truth-finding purpose to any degree that would warrant the burdensome and intrusive sanctions that plaintiffs propose. *See* Fed. R. Civ. P. 30(d)(2). Granting such sanctions would not advance the just, speedy and inexpensive determination of the matter. Fed. R. Civ. P. 1. For that reason, the Court denies the Motion's requested sanctions relief based on the instructions not to answer and will stop short, for prudential reasons, of burdening defense counsel for all time with a finding that counsel somehow behaved improperly or engaged in misconduct. This order contains no such finding.

**III.  Defense Counsel's Conferences With Witnesses During Deposition Breaks Do Not Warrant Sanctions, Let Alone the Sweeping Sanctions Plaintiffs Request.**

Next, Plaintiffs insists that defense counsel's discussions with deponents during deposition recesses were flatly improper under a theory that because federal depositions must be conducted as trials and as if the judge were present in the room, per *Hunt*, all of the communications during the breaks must be disclosed during redepositions that plaintiffs seek as sanctions, and Scoular must now produce all of the documents it withheld or redacted under privilege assertions. The Court respectfully disagrees, within the wide discretion afforded to the Court by *Hunt*.

The deposition recesses of which plaintiffs complain are starkly unlike those that have triggered sanctions or judicial opprobrium in other cases for the disruptiveness or impropriety of the interruptions. *See Medline Indus, Inc. v. Wypetech, Inc.*, No. 20 CV 4424, 2020 WL 6343089, at *4-5 (N.D. Ill. Oct. 29, 2020) (imposing attorney fee sanctions for defending counsel's having educated a representative deponent on a Rule 30(b)(6) topic during the deposition while questions were pending). Instead, the context of the recesses here, as related by the Motion, does not suggest that they were anything other than routine breaks that occurred in the ordinary course of the deposition, and not having been requested specifically to hold conferences about some question or

12

line of questions, or to coach the witness. *See* Motion at 12 (quoting witness Reed as saying, "we had a few words at some point. Like, I'm going upstairs to go to the bathroom because the downstairs bathrooms are occupied, and to get coffee"). Plaintiffs present no evidence that the recesses disrupted the depositions or amounted to improper witness coaching or "witness tampering," as Plaintiffs put it. Without having any record support for Plaintiffs' allegations of coaching, Plaintiff asks the Court to presume that coaching occurred:

> It must be presumed that improper witness coaching occurred, and an appropriate sanction should be that, in addition to payment of fees and costs, Defendant should be required to produce all documents previously withheld or redacted on grounds of privilege in unredacted form, and Plaintiffs should be allowed to resume these depositions once these documents are produced.

*Id.* at 13.

Plaintiffs also present no supporting legal authority for their requested second crack at the depositions or their request that Defendant be ordered to produce "all" (that's right, "all") documents withheld or redacted on privilege claims. Plaintiffs' argument appears to rest on a highly restrictive approach to deposition recesses, citing *Hunt*, asserting that no conferences with the deponents can happen at all during any deposition recess of any kind – if the examination is truly to be conducted as would an examination at trial. The leading case for rigid restrictions on deposition breaks, not cited by Plaintiff, is *Hall v. Clifton Precision*, 150 F.R.D. 525, 529 (E.D. Pa. 1993). Said *Hall*: "Once the deposition has begun, the preparation period is over and the deposing lawyer is entitled to pursue the chosen line of inquiry without interjection by the witness's counsel. *Private conferences are barred during the deposition ….*" *Id.* (emphasis added). But other courts have found *Hall*'s prescription, though soundly reasoned, too rigid for blanket application. *See Pape v. The Suffolk County Soc. For the Prevention of Cruelty to Animals*, No. 20-cv-01490, 2022 WL 1105563, at *3-4 (E.D.N.Y. Apr. 12, 2022) (citing cases and concluding that "[p]ersuasive to

this Court is that other district courts within this Circuit have generally declined to follow *Hall* and have found the substance of these private conferences – when no question is pending – to be protected by the attorney-client privilege"). One such case in this circuit is *Murray v. Nationwide Better Health, Ltd*, No. 10-3262, 2012 WL 3683397, at *4 (C.D. Ill. Aug. 24, 2012), citing *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998), which saw no problem with attorney-deponent conferences during deposition recesses when the recesses occurred in the ordinary course of the deposition, i.e., when they were not requested or demanded by defending counsel during deposition questioning. "So long as attorneys do not demand a break in the questions, or demand a conference between questions and answers, the Court is confident that the search for truth will adequately prevail." *Stratosphere*, 182 F.R.D. at 621.

Plaintiffs here make no attempt to argue that the breaks during the depositions at issue on the Motion were demanded by defense counsel or disrupted Plaintiffs' questioning in any way; rather, Plaintiffs argue for a categorical bar on attorney-deponent conferences during deposition recesses and an unsupported presumption of coaching as a result of those conferences. The Court respectfully declines to go that far on this record, relying more on *Stratosphere* than *Hall* in informing the Court's exercise of the wide discretion afforded to district courts in this circuit under *Hunt*. *See Gay v. City of Rockford*, No. 20 CV 50385, 2021 WL 5865716, at *3-5 (N.D. Ill. Dec. 10, 2021) (commenting that while court did not condone the manner in which defending counsel took breaks to communicate with the deponent during the deposition, the court would exercise its discretion under *Hunt* to find that the conduct did not warrant sanctions).

*Hunt*'s "brief discussion" of the mid-deposition break problem might well support, for some, the notion that in the Seventh Circuit, defending counsel simply should never have conferred privately about the substance of the matter, or about anything having to do with the deposition

14

questioning, during any deposition recess once the deposition begins. But in acknowledging "the host of intangible and equitable factors" that will drive district courts' exercise of discretion over what to do when such attorney-deponent conferences occur, the Seventh Circuit in *Hunt* did not adopt Plaintiffs' proposed "presumption" of coaching and or their rigid approach of imposing virtually automatic and highly oppressive sanctions for recesses that run afoul of *Hunt* or Rule 30. In addition, a rigid interpretation and application of *Hunt*'s "brief discussion" of mid-deposition breaks would need to be harmonized with a deponent's right to counsel during depositions, and with defending counsel's ethical obligations to remonstrate with deponents who have given false testimony. *See* Iverson at 525-26 ("a blanket no-consultation rule would interfere with an attorney's ability to confer with his client about whether to stop the deposition to obtain a protective order or whether to ask questions at the end of the deposition …. [and] would make it impossible for the attorney to comply with this ethical obligation to remonstrate with the client confidentially during the deposition"). At the very minimum, the Court considers the deponents' and Scoular's right to counsel as among the "intangible factors" to which the Seventh Circuit referred in conferring broad discretion on district courts to resolve disputes over attorney-witness communications during deposition recesses. That factor, plus the non-disruptive nature of the recesses reported by Plaintiffs in their Motion, favors an exercising of judicial discretion against imposing Plaintiffs' extreme proposed sanctions. The idea that the Court should sanction Scoular under these facts by ordering it to produce all of the documents it withheld or redacted under privilege assertions is nothing short of outlandish, and the lesser sanction of compelled redepositions of the three deponents, at least for the purposes articulated in the Motion, are equally unjustified. Finally, the Court sees no basis for the cost-shifting sanctions Plaintiffs request.

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiffs' Motion for Discovery Sanctions (D.E. 118) is denied.


**SO ORDERED.**

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**


**DATED: March 2, 2026**